# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2022-0475, <u>In the Matter of Noreen Morgan and Thomas Morgan</u>, the court on September 12, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See Sup. Ct. R.</u> 20(2). The respondent, Thomas Morgan, appeals the final decree entered by the Circuit Court (<u>Curran</u>, J.) in his divorce from the petitioner, Noreen Morgan. On appeal, he challenges the trial court's property division, order to pay insurance, and alimony award. We affirm in part, vacate in part, and remand.

The trial court has broad discretion in determining matters of property distribution and alimony when fashioning a final divorce decree. <u>In the Matter of Gronvaldt & Gronvaldt</u>, 150 N.H. 551, 554 (2004). We review its decision under our unsustainable exercise of discretion standard. <u>See</u> <u>id</u>. This standard of review means that we review only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made, and we will not disturb the trial court's determination if it could reasonably have been made. <u>In the Matter of Kurowski & Kurowski</u>, 161 N.H. 578, 585 (2011). We will not substitute our judgment for that of the trial court or reweigh equities. <u>In the Matter of Braunstein & Braunstein</u>, 173 N.H. 38, 47 (2020).

The trial court's discretion necessarily extends to matters such as assigning weight to evidence and assessing the credibility and demeanor of witnesses. <u>In the Matter of Kurowski & Kurowski</u>, 161 N.H. at 585. Conflicts in the testimony, questions about the credibility of witnesses, and the weight assigned to testimony are matters for the trial court to resolve. <u>Id</u>. The trial court's factual "findings . . . are binding upon this court if supported by the evidence" and not legally erroneous. <u>Id</u>.

On appeal, the respondent first contests the trial court's equitable distribution of his retirement benefits. He does not challenge the trial court's determination that his retirement benefits constitute property subject to equitable division. Rather, he argues that the trial court erred by failing to use the <u>Hodgins</u> formula to divide part of his retirement benefits. <u>See</u> <u>Hodgins v. Hodgins</u>, 126 N.H. 711 (1985) (superseded on other grounds by RSA 458:16-a, I (Supp. 2022)).

"The Hodgins formula calculates a percentage to be paid to an employee's former spouse by dividing the number of months the employee was employed during the marriage and before divorce commenced by the total number of credits the employee will have earned toward the retirement benefit as of the date benefits commence and awarding half of this amount to each spouse." In the Matter of Taber-McCarthy & McCarthy, 160 N.H. 112, 117 (2010). "The Hodgins formula is designed to help trial courts avoid the problem of valuation when it is impossible to determine the value of the retirement benefit at the time of divorce." Id.

The Hodgins formula is used to divide pensions that are defined benefit plans. See Rothbart v. Rothbart, 141 N.H. 71, 75-77 (1996). More specifically, the formula provides a method by which the trial court equitably allocates a percentage of monthly payments to reflect the portion of a benefit earned during a marriage. Id. at 75. A defined benefit pension is one in which the benefit is based upon an employee's years of service and increases in salary, which may make its future value speculative. See id. at 75-77; see also In the Matter of Watterworth & Watterworth, 149 N.H. 442, 452 (2003).

The Hodgins formula is not required, however, when the value of the retirement benefit is ascertainable, such as when the pension is a defined contribution plan. In the Matter of Watterworth & Watterworth, 149 N.H. at 452. A defined contribution pension "is essentially an annuity funded by periodic contributions and the interest therefrom. At the employee's retirement, the accumulated funds purchase an annuity for the remainder of the employee's life." Id. (quotation and ellipsis omitted). "[A] defined contribution pension always has an ascertainable cash value, whether or not it currently can be reached by the employee." Id. (quotation omitted).

The respondent first challenges the trial court's distribution of his National Elevator Pension Plan. He argues that the trial court erred in failing to apply the Hodgins formula because in 2018, the petitioner agreed to relinquish her "claim to any death benefit" in the National Elevator Pension Plan. This agreement, in his view, "created a legality where the amount of the pension, even after payments began to [the respondent], became unascertainable." We disagree.

The record on appeal establishes that the respondent began receiving an early pension from the National Elevator Pension Plan in February 2019, with a fixed monthly gross benefit plus a supplemental benefit payable until he reaches the age of 64. We agree with the respondent that the value of the pension is unascertainable because the number of pension payments the respondent will receive, and the amount of each payment, depends on the duration of the respondent's life. See In the Matter of Watterworth & Watterworth, 149 N.H. at 452 ("The Hodgins formula is designed to help trial courts avoid the problem of valuation when the value of the pension is, by its

nature, impossible to determine <u>at the time of divorce</u>." (quotations omitted and emphasis added)). We disagree, however, with the respondent's contention that the trial court failed to apply the <u>Hodgins</u> formula. The trial court applied the <u>Hodgins</u> formula by awarding the petitioner "one-half of the marital portion of this account valued as of March 21, 2008 (date of marriage) through the date this Decree is approved." <u>See</u> <u>Hodgins</u>, 126 N.H. at 715-16; <u>see also</u> <u>In the Matter of Costa & Costa</u>, 156 N.H. 323, 330 (2007) (explaining that, when dividing pension assets in certain circumstances, "the trial court should enter a decree, per <u>Hodgins</u>, that upon maturity of the pension rights the recipient will pay a portion of each payment received to his or her former spouse"). The petitioner's decision to relinquish her claim to any death benefits is immaterial to this analysis.

The respondent next contends that the trial court erred in failing to apply the <u>Hodgins</u> formula "to the distribution of [his] pension and annuity retirement plan" through his current employer, the Commonwealth of Massachusetts. It appears that the respondent uses the word "pension" to refer to both an annuity savings account and a deferred compensation SMART plan that he receives as a result of his employment with the Commonwealth. Thus, we confine our review to these two accounts. Regarding both the annuity savings account and the deferred compensation SMART plan, the trial court awarded "one-half of the marital portion of this account valued as of March 21, 2008 (date of marriage) through the date this Decree is approved." Because the annuity savings account had an ascertainable value as of the date of divorce, we disagree with the respondent that the trial court was required to apply the <u>Hodgins</u> formula to this account, though as noted above it effectively did so by applying a <u>Hodgins</u> methodology to the annuity's ascertainable value as of the date of the divorce. We note that the deferred compensation SMART plan is unrelated to the respondent's Massachusetts public employee retirement plan. <u>See</u> Mass. Gen. Laws Ann. ch. 32, § 3A (West 2011); <u>see also</u> Mass. Gen. Laws Ann. ch. 29, § 64 (West 2013). Therefore, to the extent that the respondent argues that the trial court erred in dividing his deferred compensation SMART plan, we disagree given that the plan also had an ascertainable value at the time of divorce. <u>See</u> <u>In the Matter of Watterworth & Watterworth</u>, 149 N.H. at 452.

The respondent also challenges the trial court's distribution of his Elevator Constructors Annuity and 401(k) Retirement Account. The respondent acknowledges that this benefit constitutes a defined contribution plan with an ascertainable value. Nevertheless, he argues that it is "unjust" to value this benefit as of the date of the final decree. Instead, he maintains that the court should have utilized a date in 2014 or 2015 based upon when the parties separated and when the petitioner stated that she wanted a divorce. In the alternative, the respondent argues that the trial court should have considered both the delay of the parties' divorce proceeding caused by the response to the COVID-19 public health emergency, as well as the "abnormally

3

long" six-month delay between the date of the final hearing and final decree, noting that the court awarded the petitioner half of his 401(k) earnings during that period. "Courts are free to exercise their sound discretion to establish an appropriate valuation date for the equitable distribution of marital assets." In the Matter of Watterworth & Watterworth, 149 N.H. at 451. Based upon our review of the record submitted on appeal, we cannot conclude that valuing the respondent's Elevator Constructors Annuity and 401(k) Retirement Account as of the date of the final decree constituted an unsustainable exercise of discretion.

The respondent next asserts that the trial court "made a clear error" by ordering him to pay the "COBRA cost of [the petitioner's] health, dental, and vision insurance" for a period of twelve months when more "affordable insurance was available." Based upon our review of the record submitted on appeal, we conclude that the trial court reasonably could have determined that it was equitable to require the respondent to pay this cost. See In the Matter of Kurowski & Kurowski, 161 N.H. at 585.

The respondent next challenges the alimony award. The trial court has broad discretion to award alimony. See In the Matter of Cohen & Richards, 172 N.H. 78, 92 (2019). We review the court's alimony determination for an unsustainable exercise of discretion, and we will uphold its factual findings unless they are unsupported by the evidence. See id. Alimony determinations are based primarily upon the parties' income and need. Id. at 83; see RSA 458:19-a (Supp. 2022). On appeal, the respondent does not challenge the trial court's determinations that he has the ability to pay and that the petitioner has a need for alimony. Rather, he challenges only the amount of alimony awarded.

RSA 458:19-a, II governs the calculation of a term alimony award. It provides that "[t]he amount of a term alimony order shall be the lesser of the payee's reasonable need, or a formula based on 23 percent of the difference between the parties' gross incomes at the time the order is created, unless the court finds that justice requires an adjustment." RSA 458:19-a, II(a).

Here, the trial court ordered term alimony in the amount of $2,218.50 per month, which represents twenty-three percent of the difference between the parties' gross incomes at the time the order was issued. The trial court did not find that any special circumstances warranted an adjustment to this formula calculation.

The respondent argues that the trial court's calculation is wrong, in part because the court failed to subtract from his gross income the cost of the petitioner's health, dental, and vision insurance that the court ordered him to pay. We agree. When calculating the gross income of the parties for the purposes of a term alimony award, the court is required to subtract "amounts

4

that are ordered and actually paid for" such as the "[c]osts for health insurance coverage or other specified expenses for the benefit of the other party." RSA 458:19-a, II(a)(1)(B). Having reviewed the entire record, including the trial court's order denying the respondent's motion for reconsideration, we vacate the alimony award because the trial court failed to make this deduction and remand because we cannot determine whether, had it made this deduction, the trial court would have found that special circumstances warranted an adjustment to the new formula amount.

In the interests of judicial economy, we address the respondent's remaining arguments concerning alimony to the extent that they are likely to arise on remand. The respondent also argues that the trial court should have subtracted from his gross income the amount of his National Elevator Pension Plan that the court ordered he pay to the petitioner, and that the court should have added that amount to the petitioner's gross income.

Here, the record reveals that when it calculated the alimony award to the petitioner, the trial court attributed all of the respondent's pension benefits to the respondent as part of his gross income. Under RSA 458:19, V (Supp. 2022), "[g]ross income" for alimony purposes is defined as "all income from any source, whether earned or unearned, including, but not limited to . . . pensions." Accordingly, the respondent's National Elevator Pension Plan, which he receives monthly, is unquestionably included as "gross income" for alimony purposes, which only the respondent received "at the time the order [was] created." RSA 458:19-a, II(a).[1]

Nevertheless, the statute permits the trial court to deviate from the statutory formula when it "finds that justice requires an adjustment." Id. Here, we agree with the respondent to the extent that the trial court should have considered whether equity or the interests of justice "require[d] an adjustment" from the statutory formula to avoid double counting the respondent's pension income — both as part of the twenty-three percent of his gross income in the alimony award and as part of the property distribution. See id. We also agree with the respondent that the trial court did not make any findings in its alimony determination as to how distributing part of the respondent's pension benefits in its property division affected either party's ability to provide for his or her own reasonable needs. See RSA 458:19-a, I(a) ("[T]he court may order term alimony only if it finds . . . [the] party in need lacks sufficient income, property, or both, including property apportioned in accordance with RSA 458:16-a . . . ."); see also In the Matter of Cohen & Richards, 172 N.H. at 83 ("When a party requests alimony, the trial court may exercise its discretion by ordering an alimony award, considering, inter alia, the marital property awarded to each party and the parties' sources of income and need."). Accordingly, we instruct the court on remand to consider both of

---

[1] Once received, pension payments to the spouse would also count as income.

5

these factors when calculating its alimony award for the petitioner and its evaluation of the distribution of the marital property.

In conclusion, we uphold the trial court's: (1) division of the respondent's Elevator Constructors Annuity and 401(k) Retirement Account, National Elevator Pension Plan, Massachusetts annuity savings account, and deferred compensation SMART Plan; and (2) order requiring the respondent to pay the "COBRA cost of [the petitioner's] health, dental, and vision insurance" for a period of twelve months. We vacate the trial court's alimony award and remand for further proceedings consistent with this order.

<u>Affirmed in part; vacated in part; and remanded</u>.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**

6