# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0606, <u>In the Matter of Coleen Walsh and Steven Walsh</u>, the court on June 8, 2017, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  See <u>Sup. Ct. R.</u> 18(1).  We affirm.

The respondent, Steven Walsh (husband), appeals a final decree and uniform support order issued by the Circuit Court (<u>Leonard</u>, J.) in his divorce from the petitioner, Coleen Walsh (wife).  He contends that the trial court erred by:  (1) disproportionately distributing the marital assets in the wife's favor, <u>see</u> RSA 458:16-a (2004); (2) awarding the wife alimony, <u>see</u> RSA 458:19 (Supp. 2016); and (3) ordering him "to pay full guidelines child support," <u>see</u> RSA 458-C:3 (Supp. 2016).

We first address the issues regarding the distribution of marital assets.  In reviewing the trial court's distribution of marital property as part of a final decree of divorce, our role is not to reweigh the equities and divide the property accordingly.  <u>In the Matter of Heinrich & Heinrich</u>, 164 N.H. 357, 365 (2012).  Rather, our limited role is to determine whether the trial court's decision was a sustainable exercise of discretion.  <u>In the Matter of Henry & Henry</u>, 163 N.H. 175, 183 (2012).  When we determine whether a ruling made is a proper exercise of judicial discretion, we are really deciding whether the record establishes an objective basis sufficient to sustain the trial court's discretionary judgment.  <u>State v. Lambert</u>, 147 N.H. 295, 296 (2001).  We will not disturb the trial court's determination if it could reasonably be made.  <u>Heinrich</u>, 164 N.H. at 365.

In a divorce, marital property is not to be divided according to a mechanical formula, but in a manner deemed "just" based upon the evidence presented and the equities of the case.  <u>In the Matter of Sarvela & Sarvela</u>, 154 N.H. 426, 431 (2006).  Under RSA 458:16-a, II, an equal division of property is presumed equitable unless the trial court decides otherwise after considering one or more factors.  <u>In the Matter of Costa &  Costa</u>, 156 N.H. 323, 327 (2007).  The court need not consider all the statutory factors or give them equal weight.  <u>Id</u>.

The trial judge is in the best position to evaluate the evidence, measure its persuasiveness, and assess the credibility of witnesses.  <u>In the Matter of</u>

Salesky & Salesky, 157 N.H. 698, 708 (2008).  The trial court is not precluded from awarding a particular asset in its entirety to one party.  Henry, 163 N.H. at 183.

The husband contends that the trial court "erroneously considered that '[he] inappropriately used approximately $30,000 of joint marital funds after the Court entered into [sic] a Non-Hypothecation order.'"  However, the trial court found, and the evidence supports, that, after the parties were separated, the husband transferred $14,834.96 from the parties' joint checking and savings accounts into his individual account and further paid his attorney $4,000 from the parties' joint checking account.  Moreover, the trial court found, and the evidence supports, that the husband took a $15,000 loan against his 401(k) account approximately a week before the wife petitioned for divorce and a second $10,000 loan against the same account approximately three months after the petition.  Although the husband represents that the first loan was used to purchase the parties' boat, the trial court found, and the evidence supports, that he "failed to disclose where the $15,000.00 was deposited and how the $15,000.00 was spent."  Furthermore, the trial court found, and the record supports, that he purchased the boat with funds from the parties' joint checking account the day before the proceeds from the first 401(k) loan were disbursed.

To the extent that the husband argues that the first loan against the 401(k) account did not violate the non-hypothecation order because it pre-dated that order, this does not affect the trial court's equitable consideration of this loan when dividing the marital estate.  To the extent that he argues that the trial court failed to set-off the loan against the value of the boat, which was distributed to him, the trial court could have reasonably found that the first loan was not used to purchase the boat.  To the extent that he argues that the loans should have been considered "joint obligations," the wife testified, and the husband did not contest, that she received no portion of the loan proceeds.

To the extent that the husband argues that he used marital funds to "pay the parties' living expenses," we note that the husband testified that, although his annual salary exceeded $100,000, he paid no child support for a year after the petition was filed.  Furthermore, although the temporary order made him responsible for these expenses, he allowed the house insurance to lapse, he was not current on the mortgages, and his failure to pay taxes resulted in a lien being placed upon the house.  We also note that the husband testified that he vacationed in Las Vegas less than two months after the wife petitioned for divorce.

The husband argues that the trial court did not consider evidence that the wife "withdrew funds from her retirement account during the pendency of the divorce."  However, the wife represents, and the husband does not contest, that her account was established prior to the marriage and that she did not

2

contribute to it during the marriage. Because the trial court awarded the wife a share of only that portion of the husband's 401(k) account that accrued during the marriage, it could have reasonably determined that the husband was not entitled to a share of the wife's premarital retirement account. Furthermore, as discussed above, the husband took substantial funds from the parties' joint checking and savings accounts, and the wife testified that she had no money. The wife testified that she liquidated her retirement account so she could pay for the parties' child's kindergarten program and purchase heating oil. Accordingly, the trial court could have reasonably determined that the wife liquidated her retirement funds to support herself and the child at a time when the husband was not paying child support. See RSA 458:16-b, I(b) (2004) (allowing funds subject to non-hypothecation order to be expended "[f]or reasonable and necessary expenses of living"); Heinrich, 164 N.H. at 365.

The husband argues that the trial court erred by awarding the marital home, in which the parties had approximately $71,500 in equity, to the wife. However, the trial court could have reasonably determined that this was the most efficient way to compensate for the funds that the husband took from the joint accounts and his 401(k) account. Furthermore, the wife testified that she had curtailed her employment after the child was born, see RSA 458:16-a, II(h), and that she wished to preserve the marital home for the parties' child's benefit, see RSA 458:16-a, II(e).

To the extent that the husband argues that the trial court erred by awarding the house to the wife because his parents gave him and the wife each $20,000 when they married and bought the house, the husband does not explain why those gifts should not be considered marital assets. See Sarvela, 154 N.H. at 431 (stating RSA 458:16-a does not exclude property given to a spouse during marriage).

Accordingly, we conclude that the record establishes an objective basis sufficient to sustain the trial court's discretionary judgment to distribute the marital assets unequally by awarding the marital home to the wife. See Heinrich, 164 N.H. at 365; Costa, 156 N.H. at 328.

We next address whether the trial court erred in awarding the wife alimony of $1,000 per month for one year. Trial courts have broad discretion in awarding alimony. In the Matter of Peirano & Larson, 155 N.H. 738, 746 (2007). RSA 458:19, I, authorizes the trial court to award alimony if: (1) "[t]he party in need lacks sufficient income, property, or both" to provide for her reasonable needs, considering "the style of living to which the parties have become accustomed during the marriage"; (2) the payor is able to continue to meet his own reasonable needs, considering "the style of living to which the parties have become accustomed during the marriage"; and (3) "[t]he party in need is unable to be self-supporting through appropriate employment at a standard of living that meets reasonable needs." RSA 458:19, I. We review the

3

trial court's decision to grant a request for alimony under our unsustainable exercise of discretion standard.  In the Matter of Hampers & Hampers, 154 N.H. 275, 283 (2006).

> When determining the amount of alimony, a trial court must consider the length of the marriage; the age, health, social or economic status, occupation, amount and sources of income, the property awarded under RSA 458:16-a, vocational skills, employability, estate, liabilities, and needs of each of the parties; the opportunity of each for future acquisition of capital assets and income; the fault of either party as defined in RSA 458:16-a, II(l); and the federal tax consequences of the order.

RSA 458:19, IV(b).  Further, the court may consider the parties' economic contributions to the value of their respective estates and non-economic contributions to the family.  See RSA 458:19, IV(d).

The husband argues that the wife had two years while the divorce was pending in which to become self-supporting.  However, as noted above, the husband did not contribute to the child's support for the first year.  The wife testified that she had been looking for another job, but had been unable to find one that paid comparably to the part-time position she had held for 14 years.

The husband argues that the trial court "fail[ed] to specify written reasons for granting the amount of alimony it ordered and there were no factual findings as to [the wife's] need for alimony or [his] ability to pay alimony."  However, the trial court issued a nine-page narrative order and ruled upon a total of 130 requests for findings of fact and rulings of law submitted by the parties.  See In the Matter of Letendre & Letendre, 149 N.H. 31, 35 (2002).  The trial court granted, and the evidence supports, the wife's requested findings that:  (1) the husband had "an ability to pay alimony, and [she was] unable to be self-supporting"; and (2) her "income is substantially lower than [the husband's] income, she has limited ability to increase her income and has substantial debt from the marriage and the divorce."

Moreover, the trial court found that:  (1) the parties had been married for 12 years; (2) the parties separated after the husband was arrested and charged with assault on the wife; (3) the husband pleaded guilty to assaulting the wife; (4) the wife is 50, has an "Associate's Degree in Secretarial," and works part-time as a private certified nursing assistant; (5) the wife reduced her working hours after the parties' child was born; and (6) the wife is in need of alimony.

To the extent that the husband argues that the trial court did not consider the amount of child support that the wife would receive, alimony and child support serve different public policies, are governed by different statutes, and are awarded based upon different factors.  In the Matter of Watterworth &

4

Watterworth, 149 N.H. 442, 446 (2003) (stating trial court may not award child support in guise of alimony). To the extent that the husband argues that the trial court did not clarify how its finding that the wife's boyfriend should be contributing to the household expenses affected the alimony award, it was not required to do so.

Given the record and the narrative order, we conclude that the trial court made sufficient written findings to support its award of alimony to the wife. See Heinrich, 164 N.H. at 364. We further conclude that the record establishes an objective basis sufficient to sustain the trial court's discretionary judgment regarding alimony. See Hampers, 154 N.H. at 283.

Finally, we address the husband's argument that the trial court erred by ordering him to pay child support in accordance with the child support guidelines, see RSA 458-C:3, when the parties have equal parenting time. However, RSA 458-C:5, I(h)(1) (Supp. 2016) provides that "[e]qual or approximately equal parenting residential responsibilities . . . shall not by itself constitute ground for an adjustment" from the guidelines. To the extent that he argues that the trial court was required to make findings to justify its use of the guidelines, RSA 458-C:4, II (2004) creates a presumption that application of the guidelines produces "the correct amount of child support."

The husband's remaining arguments are either not sufficiently developed, see State v. Blackmer, 149 N.H. 47, 49 (2003), or otherwise do not warrant further discussion, see Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

Dalianis, C.J., and Hicks and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**